**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 29, 2016**

# In the Court of Appeals of Georgia

A16A0452. DEMPS v. THE STATE.

McMILLIAN, Judge.

Kashif Demps appeals the trial court's denial of his motion for new trial after a jury again convicted him in 2012 of armed robbery and possession of a firearm during the commission of a felony.[1] Demps asserts that the trial court erred by (1) allowing the admission of similar transaction evidence; (2) instructing the jury that it could find Demps guilty of possessing a firearm during the commission of a felony in a manner not alleged in the indictment; and (3) allowing the State to impermissibly use similar transaction evidence in closing argument. Demps also asserts that his

---

[1] Demps was first tried and convicted on these charges, as well as aggravated assault, in 2009. However, in May 2010, the trial court granted Demps a new trial on the ground that he had received ineffective assistance of counsel. Following the second jury's conviction, the trial court ultimately sentenced Demps to a total of 15 years, with 10 years to be served in confinement.

conviction must be reversed because it is based on insufficient circumstantial evidence. For the reasons that follow, we find no error and affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence." (Citation omitted.) *Al-Amin v. State*, 278 Ga. 74, 74 (1) (597 SE2d 332) (2004). We "do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt." (Citation omitted.) Id.

So viewed, the evidence shows[2] that the victim, who worked at a barbershop in southwest Atlanta, walked to a nearby Church's Chicken for dinner after dark on

---

[2] We note at the outset that Demps' brief fails – in several respects – to comply with the rules of this Court, which require "a succinct and accurate statement of the proceedings below and the material facts relevant to the appeal and the citation of such parts of the record or transcript essential to a consideration of the errors complained of, and a statement of the method by which each enumeration of error was preserved for consideration." Georgia Court of Appeals Rule 25 (a) (1). We remind counsel that our requirements for appellate briefs "were created not to provide an obstacle, but to aid parties in presenting their arguments in a manner most likely to be fully and efficiently comprehended by this Court." (Citation and punctuation omitted.) *Biggins v. State*, 322 Ga. App. 286, 287-88 (1) (744 SE2d 811) (2013). "Further, this Court will not cull the record in search of error on behalf of a party. Accordingly, if we have missed something in the record or misconstrued an argument, the responsibility rests with counsel." (Citation omitted.) Id. at 288.

November 16, 2007. When he arrived, the door was locked, and the employee indicated through the door that the restaurant was closed. As the victim turned to head back, he noticed that there was a black Crown Victoria sitting in the drive-through with a police scanner on top. Halfway down the block, the victim heard a rustling noise and turned to see two men behind him. The men asked the victim for a "light," and after giving them a light, he continued walking. However, the two men put a gun to each side of the victim's head and directed him behind a building where they forced him to remove his clothing and hand over all his belongings. In addition to his clothing and boots, the two men took the victim's cell phone, his wallet containing approximately $60 in cash, and a money order. At trial, the victim testified that one of the two men was taller and held a black gun while the shorter man had a silver gun.

The victim immediately reported the robbery, and officers arrived within three or four minutes. The victim told the police that he had been robbed and described the suspicious black Crown Victoria he had seen just before the robbery occurred. An officer sent the call out over the radio, and approximately one minute later, another officer located the vehicle and pulled the driver over. Police later identified Demps

3

as the driver of the vehicle and Demetrius Walker as the passenger.[3] A third person, Chequita Woody, was in the back seat of the vehicle. Although the victim was only able to identify Walker as one of the men who had robbed him, he recognized the vehicle and saw his phone and clothing inside the car.

At trial, the State presented evidence that Demps had been arrested in 2005 for armed robbery in Clayton County (the "2005 robbery").[4] Felix Cuevas testified that he was robbed by two men at gunpoint, with one holding a silver gun, while he was walking home alone from work. The men took his backpack and wallet, which were later recovered by police and returned to him. Major Joseph Woodall of the Clayton County police department testified that he had received a lookout regarding an armed robbery involving a white Ford SUV and responded to assist when a vehicle matching the description was pulled over by another officer. When he arrived at the scene, Major Woodall saw Demps exit the driver's door and flee on foot but he was able to quickly apprehend him. Meanwhile, Officer Brian Bush made a cursory check of the vehicle and found two handguns (one black and one silver), a backpack, some

---

[3] Walker was indicted with Demps but entered a guilty plea on all charges on the eve of the first trial.

[4] In exchange for Demps' guilty plea to one count of criminal use of a firearm with an altered serial number, the State dismissed all remaining charges in that case.

clothing, a wallet and miscellaneous papers scattered outside the vehicle on the sidewalk. The wallet contained an I.D. for a Felix Cuevas.

Demps testified in his own defense at trial. With respect to the 2005 robbery charge, he claimed that he had received a call from a friend to pick him up, so he drove his white Ford Explorer to an apartment complex to get him and another individual. While they were driving through a nearby neighborhood, a police vehicle pulled behind them and followed them for a while. According to Demps, as he was driving, he saw his friends going through a backpack and "talking about what they just did." After the police stopped him, he ran because he knew that his friends had just committed a robbery. Although he admitted to owning a gun that he had in the car with him, he denied participating in the robbery.

Regarding the 2007 robbery at issue in this case, Demps claimed that he received a call from Walker, a long time friend of his, asking for a ride home from Cleveland Avenue. When he picked up Walker, a man he knew as "New York" and Woody, the mother of Walker's child, were with Walker. All four of them then stopped at Church's Chicken to get some food because Woody was hungry. Demps parked the car, and although he did not see them, he assumed that Walker and New York went inside the restaurant. Five minutes later, they returned without any food,

5

but Demps did not ask why they did not get any food. He proceeded to drop off New York at a nearby apartment.

While on the way to take Walker and Woody home, Demps was pulled over by police and saw Walker take a gun from his pants and place it on the floor of the car. Demps admitted that when he stepped out of the car, he said "You got me, I did it" but claimed that he was referring to having run a yellow light. He denied seeing a gun or the victim's belongings until he was pulled over and claimed that Walker or New York must have concealed the boots, jeans, and sweatshirt under his coat. He further denied participating in or even knowing about the robbery. On cross-examination, Demps testified that he is 5'10", whereas Walker is 6'2" and New York is 6'3". He also stated that he had approximately $70 in cash on him when he was arrested.

1. In his first enumeration of error, Demps asserts that the trial court erred in admitting evidence of the 2005 robbery because it should not have been admitted on the issue of identity and because no witness specifically identified Demps as one of the perpetrators of the 2005 robbery. Under our former Evidence Code,[5] similar transaction evidence was admissible if the State showed that

[5] Because this case was tried in December 2012, Georgia's former Evidence Code applies here. Under the new Evidence Code, the admissibility of this type of evidence is governed by OCGA § 24-4-404 (b).

6

(1) it sought to introduce the evidence not to raise an improper inference as to the accused's character, but for some appropriate purpose which has been deemed to be an exception to the general rule of inadmissibility; (2) there was sufficient evidence to establish that the accused committed the independent offense or act; and (3) there was a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter.

(Citations and punctuation omitted.) *Brittain v. State*, 329 Ga. App. 689, 701 (3) (766 SE2d 106) (2014). See also *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991) (establishing the three-prong test). "A trial court's decision to admit similar transaction evidence will not be disturbed absent an abuse of discretion." (Citation omitted.) *Redding v. State*, 297 Ga. 845, 847 (2) (778 SE2d 774) (2015).

(a) During the course of the first trial, the trial court ruled that the 2005 robbery would be admissible, but the State was unable to locate the victim at that time. Once the State was able to locate Cuevas for the second trial, it filed notice of its intent to present Cuevas as a witness for the limited purposes of illustrating the defendant's state of mind, intent, motive, modus operandi, and course of conduct.[6] Demps first

---

[6] At a hearing on the matter, the State sought to admit the similar transaction evidence primarily for the purposes of showing course of conduct and bent of mind but also suggested the 2005 robbery was sufficiently similar to the facts of this case

argues that it was error to allow the State to introduce the 2005 robbery as evidence

of identity where the two crimes were not so distinctive as to show they were

committed by the same person. However, pretermitting whether Demps preserved this

enumeration of error for review,[7] the trial court properly admitted the similar

transaction evidence for the State's requested purposes of course of conduct and bent

of mind.[8] Accordingly, Demps cannot show reversible error on this ground. See

*Matthews v. State*, 294 Ga. 50, 54 (3) (c) (751 SE2d 78) (2013) (where trial court

properly admitted similar transaction evidence following limiting instructions, its

failure to limit the use of the similar transaction evidence to the purposes requested

by the State was not reversible error); *Curry v. State*, 330 Ga. App. 610, 615, n.11 (1)

(768 SE2d 791) (2015) (because similar transaction evidence was relevant to show

---

to permit its admission for purposes of identification as well.

[7] See *Jennings v. State*, 277 Ga. App. 159, 162 (3) (626 SE2d 155) (2006) (defendant waived similar transaction evidence objection where the only issue preserved in the record was his claim that the State failed to produce sufficient evidence that he was the man who committed the prior crime).

[8] We also note that the trial court gave appropriate limiting instructions, explaining that the jury could only consider the evidence for the three limited purposes stated and that it was up to the jury to determine whether the evidence proved any of those purposes at all.

intent, we need not address trial court's findings that it was also relevant to show motive, plan, and identity).

(b) Demps also asserts that evidence of the 2005 robbery was not admissible because no witness identified Demps at trial as the perpetrator of that crime. This argument is without merit. Again, pretermitting whether Demps waived appellate review of this issue, we find no abuse of discretion. "Absolute proof is not required that a defendant committed the offense in a similar transaction." (Citation and punctuation omitted.) *Dean v. State*, 321 Ga. App. 731, 733 (1) (a) (742 SE2d 758) (2013) (only a preponderance of the evidence is required to prove defendant committed the prior act, which may be proven by circumstantial evidence).

Here, although the victim of the 2005 robbery was unable to identify Demps as one of the perpetrators, Demps was arrested shortly thereafter in possession of a gun and the victim's belongings after initially fleeing from police. In addition, the State produced Demps' signed guilty plea, and the trial court, after noting the uniqueness of Demps' name and the matching date of birth, found the signature on the guilty plea to be "real close to identical" to Demps' signature on the indictment in the case sub judice. And finally, Demps himself testified that he had been apprehended for the 2005 robbery after fleeing from the police and that he ultimately

9

pled guilty in that case to one count of criminal use of a firearm with an altered serial number. Accordingly, this enumeration of error fails.

2. Demps next contends that the trial court erred in instructing the jury that it could find him guilty of possessing a firearm during the commission of a felony in a manner not alleged in the indictment. It is undisputed that Demps did not object to the jury charges at trial. Thus, our review is limited to a plain error analysis under OCGA § 17-8-58 (b).[9] See *State v. Kelly*, 290 Ga. 29, 31 (1) (718 SE2d 232) (2011).

The test for determining whether there has been plain error in a jury instruction is:

> First, there must be an error or defect -- some sort of deviation from a legal rule -- that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the

---

[9] OCGA § 17-8-58 (b) provides:

Failure to object in accordance with subsection (a) of this Code section shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties. Such plain error may be considered on appeal even if it was not brought to the court's attention as provided in subsection (a) of this Code Section.

10

ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the *discretion* to remedy the error -- discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citations omitted; emphasis in original.) *Williams v. State*, 297 Ga. 460, 464-65 (3) (773 SE2d 213) (2015).

As we understand Demps' argument on appeal, he now asserts that the trial court erred in instructing the jury that "a person commits the offense of possession of a firearm during the commission of a felony when the person has on, or within arm's reach of his person, a firearm during the commission of or any attempt to commit a felony." According to Demps, this was error because evidence was presented at trial that he possessed a firearm during the commission of armed robbery, a felony, as well as during the commission of aggravated assault, also a felony. However, in defining the remaining charges, the trial court did not define aggravated assault as a felony. Rather, after defining possession of a firearm during the commission of a felony, the trial court instructed the jury only that "[t]he offense of robbery is a felony under the laws of this State." Because the trial court's instructions regarding the possession charge focused the jury's attention on robbery without

11

mentioning aggravated assault or identifying any offense other than robbery as a felony, Demps has not shown either clear error or that the complained of instruction affected the outcome of the proceedings.[10] See *Robinson v. State*, 298 Ga. 455, 462 (5) (782 SE2d 657) (2016) (no plain error where jury instructions, as a whole, were proper); *Martin v. State*, 298 Ga. 259, 277 (6) (b) (779 SE2d 342) (2015) (no plain error where trial court's failure to include all language from pattern jury charge did not affect trial outcome).

3. Demps also asserts that he was denied a fair trial where the State improperly commented on similar transaction evidence in closing argument. We first note that a review of the record shows that Demps did not object to any portion of the State's closing arguments at trial, such that he has waived appellate review of this issue. However, pretermitting this waiver, for the reasons discussed in Division 1, this enumeration of error provides no basis for reversal.

4. In his final enumeration of error, Demps argues that his conviction must be reversed as it is based on insufficient circumstantial evidence because the victim could not identify him as one of the men who robbed him and there was no evidence that he knew that Walker and New York were about to commit an armed robbery.

---

[10] We also note that the jury did not convict Demps of aggravated assault.

Thus, Demps appears to argue that his conviction was based solely on circumstantial evidence, such that the evidence must "exclude every other reasonable hypothesis save that of the guilt of the accused." Former OCGA § 24-4-6.[11] However, as our Supreme Court has explained, "not every hypothesis is a reasonable one, and the evidence need not exclude every *conceivable* inference or hypothesis – only those that are reasonable." (Citation and punctuation omitted; emphasis in original.) *Black v. State*, 296 Ga. 658, 660 (1) (769 SE2d 898) (2015). Moreover, "[w]hether an alternative hypothesis raised by the defendant is reasonable is a question committed principally to the jury, and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of the guilt of the accused, we will not disturb that finding unless it is insupportable as a matter of law." (Citation and punctuation omitted.) Id.

Here, the State presented evidence that two men, one taller and one shorter, used handguns to take property from the victim, and within minutes the police located Demps' vehicle, which matched the victim's description and contained his stolen belongings as well as two handguns. When stopped, Demps spontaneously stated,

---

[11] Former OCGA § 24-4-6 has been carried forward into the new Evidence Code at OCGA § 24-14-6.

13

"You got me, I did it." Given these facts, the jury was authorized to discredit Demps' version of events.

Moreover, contrary to Demps' assertions, the evidence was sufficient for the jury to convict him as a party to the crimes. Under Georgia law, a person may be convicted of a crime even if he does not directly commit the crime, but is instead a party to the crime. See *Flournoy v. State*, 294 Ga. 741, 756 (3) (755 SE2d 777) (2014). "A party to a crime is one who intentionally aids or abets the commission of the crime, or intentionally advises, encourages, hires, counsels, or procures another to commit the crime. OCGA § 16-2-20 (b) (3), (4)." (Citation and punctuation omitted.) *Taylor v. State*, 331 Ga. App. 577, 581 (2) (a) (771 SE2d 224) (2015). Here, the State showed that Demps was – for the second time in two years – quickly found by police while driving a car containing the possessions of a nearby pedestrian who had been robbed at night by two armed men. Thus, we cannot say the jury's convictions are insupportable as a matter of law. See *Clemente v. State*, 331 Ga. App. 84, 86 (769 SE2d 790) (2015) (whether defendant aided and abetted other men in the armed robbery was a question for the jury); *Parnell v. State*, 260 Ga. App. 213, 220 (6) (581 SE2d 263) (2003) (jury authorized to find "getaway" driver was a party to

14

the charged offenses). Accordingly, the trial court did not err in denying Demps'

motion for new trial.

*Judgment affirmed. Miller, P. J., and McFadden, J., concur.*